**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**KEVIN WIMBLEY**                                                                            **PLAINTIFF**

**V.**                                    **NO. 5:17CV00324 SWW/PSH**

**SOCIAL SECURITY ADMINISTRATION**                                      **DEFENDANT**

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

I. **Introduction**:

Plaintiff, Kevin Wimbley, applied for disability benefits on October 16, 2014, alleging a disability onset date of December 14, 2009. (Tr. at 61). He later amended his onset date to November 1, 2014. *Id*. The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Wimbley's claim. (Tr. at 72). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Wimbley has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

II. **The Commissioner's Decision**:

The ALJ found that Mr. Wimbley had not engaged in substantial gainful activity since the alleged onset date of November 1, 2014. (Tr. at 63). At Step Two of the sequential five-step

analysis, the ALJ found that Mr. Wimbley had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral sacroiliitis, and obesity. *Id*.

The ALJ found that Mr. Wimbley's impairment did not meet or equal a listed impairment. (Tr. at 65). Before proceeding to Step Four, the ALJ determined that Mr. Wimbley had the residual functional capacity ("RFC") to perform work at the sedentary level, with some limitations. *Id*. He could occasionally stoop, bend, kneel, crouch, crawl, and climb ramps and stairs. *Id*. He could only occasionally push and pull with his lower extremities. *Id*. He must have the option to change position between sitting and standing every 30 minutes. *Id*. He is limited to unskilled work. *Id*.

The ALJ next found that Mr. Wimbley was unable to perform his past relevant work. (Tr. at 70). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Wimbley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, such as document preparer and food and beverage order clerk. (Tr. at 72). Therefore, the ALJ found that Mr. Wimbley was not disabled. *Id*.

### III.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take

into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.   Mr. Wimbley's Arguments on Appeal

Mr. Wimbley contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ did not give appropriate weight to the medical opinions in the record and that the RFC failed to incorporate all of his limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Mr. Wimbley suffered low back pain during the relevant time-period. There were records from an April 2014 hospital visit for back pain, occurring before the relevant time-period, but those did not show significant deterioration. An MRI of the lumbar spine on April 21, 2014 showed stable degenerative disc disease with a small central protruding disc resulting in minimal thecal sac effacement. (Tr. at 742). The remainder of the lumbar spine was unremarkable. *Id*. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). The ER doctor found no overt weakness and x-rays were unremarkable. (Tr. at 585, 804). The doctor did not recommend surgery. (Tr. at 585). He recommended that Mr. Wimbley continue on his course of medication management. *Id*. The

need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). By May 12, 2014, Dr. Simmie Armstrong, treating M.D., noted that Mr. Wimbley was doing a lot better. (Tr. at 809). Muscle relaxers and rest were helping greatly. (Tr. at 741). Mr. Wimbley testified at the hearing that lumbar steroid injections had helped to some degree. (Tr. at 98). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

An Arkansas Rehabilitation Services counselor evaluated Mr. Wimbley on September 23, 2014, also before the relevant time-period. He said that Mr. Wimbley had limitations on walking, standing, stooping, bending, kneeling, pushing, and pulling, and that he would need to change from sitting to standing as needed. (Tr. at 823). While Mr. Wimbley contends that the ALJ did not give proper weight to this opinion, the RFC incorporated almost verbatim these limitations, including the need to change positions.

Mr. Wimbley saw a chiropractor in 2014 and 2015. While the chiropractor said his back problem was severe and chronic, he also urged him to exercise and stretch. (Tr. at 835-841). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Mr. Wimbley reported back pain at mental health counseling sessions in 2015, but the record does not show that he sought treatment from a medical doctor throughout much of 2015 for back pain. (Tr. at 852-884). The Court cannot rely simply upon unsubstantiated subjective complaints to support Mr. Wimbley's allegations. Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

In June 2016, a lumbar MRI showed mild conditions. (Tr. at 907). At that time, Dr. Armstrong limited Mr. Wimbley to essentially sedentary work with the ability to change position. (Tr. at 911). The RFC for sedentary work reflects that the ALJ gave some weight to this opinion; however, the ALJ disregarded Dr. Armstrong's opinion that Mr. Wimbley was not able to work, because a medical opinion on a claimant's ability to work involves an issue reserved for the Commissioner, and therefore is not entitled to controlling weight. *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). After the hearing, Mr. Wimbley submitted a medical source statement from Dr. Armstrong dated before the relevant time-period. (Tr. at 21-25). The Appeals Council found that the statement would not change the outcome of the case. Indeed, the statement suggested extreme limitations at a time when Mr. Wimbley was already working, and it was on a simple checkbox form. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

In September 2016, Dr. Muhammed Arshad found tenderness and trigger points in the lumbar spine and diagnosed bulging lumbar disc, degenerative disc disease, bilateral sacroiliitis, cervicalgia, and diffuse myofascial pain syndrome. (Tr. at 45-48). Mr. Wimbley was fitted for a back brace and TENS unit, and continued on medication. (Tr. at 47). Again, surgery was not recommended.

A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the

need to evaluate the record as a whole. *Id*. An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

The medical opinions were consistent with the limitation to sedentary work. In the RFC, the ALJ recited almost verbatim most of the physicians' functional limitations. And the ALJ considered the mild objective testing results, conservative treatment, and positive response to pain medication when he discredited portions of the medical opinions that were not supported by the record. He also considered that Mr. Wimbley admitted he could perform many activities of daily living, like cooking meals, dusting, doing laundry, driving, and shopping. (Tr. at 67). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ gave appropriate weight to all of the medical opinions.

The RFC was also consistent with the medical record. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

MRIs revealed mild conditions. Treatment was conservative. Rest, medication, and injections helped. The chiropractor suggested exercise. Surgery was not recommended. And Mr. Wimbley could perform his daily activities. The ALJ considered all of these factors when he

assigned the RFC, and ultimately found that Mr. Wimbley could work. He did not err in that determination.

**VI.** <u>**Conclusion**</u>**:**

There is substantial evidence to support the Commissioner's decision that Mr. Wimbley was not disabled. The ALJ properly weighed the medical opinions and the RFC incorporated all of Mr. Wimbley's limitations. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 21st day of September, 2018.

_____

UNITED STATES MAGISTRATE JUDGE